

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 23, 2021

**BY ECF**
The Honorable Sidney H. Stein
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *United States v. Desirae Schneider*, 20 Cr. 325 (SHS)

Dear Judge Stein:

The Government respectfully submits this letter in advance of the sentencing of the defendant, Desirae Schneider. For the reasons explained below, the Government submits that a sentence within the applicable Guidelines range of 87 to 108 months' imprisonment (the "Guidelines Range") would be sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing.

### I.   Offense Conduct and Procedural Background

In September and October 2018, the defendant paid for the murder of her wife. As described further below, the defendant took multiple, calculated steps to pay for the murder and to attempt to hide her tracks. Fortunately, the murder was never carried out, and the defendant's wife was not physically harmed.

The defendant's plot to murder her wife began on or about September 14, 2018, when the defendant placed an order on a dark web website ("Website-1") to kill her wife. (PSR ¶ 12.) Website-1 advertised that customers could pay for an act of violence to be committed against a victim, and Website-1 suggested that customers use bitcoin to pay for the acts of violence. (PSR ¶¶ 10-11.) The most expensive service listed on Website-1 was murder, which ranged from $5,000 to $200,000. (PSR ¶ 10.) When the defendant raised concerns about purchasing a large amount of bitcoin to pay for the murder, Website-1 instructed the defendant to tell the bank that she "want[ed] to invest in bitcoin all your savings." (PSR ¶ 13.)

The defendant took several steps to pay for the murder and cover up her involvement. On September 16, 2018, the defendant took out a $6,000 loan in the name of her wife, and the defendant never told her wife about the loan. (PSR ¶¶ 16, 24.) On the same day, the defendant created an account with Coinbase, a cryptocurrency exchange. (PSR ¶ 15.) On September 19, 2018, using her newly created Coinbase account, the defendant purchased bitcoin worth

approximately $6,170. (PSR ¶ 16.) However, the bitcoin was not immediately available. As a result, the defendant informed Website-1 that it could take up to 12 days for the defendant to be able to pay for the murder order. (PSR ¶ 17.) On September 19, 2018, the defendant created a new email address and opened a new account on another cryptocurrency exchange, Localbitcoins.com. (PSR ¶ 18.) The defendant then transferred almost all of the bitcoins from her newly created Coinbase account to her newly created Localbitcoins.com account. (PSR ¶ 18.) Following the instructions from Website-1, the defendant wrote in the "Notes" column of several of the transfers that the transfer was for "investment." (PSR ¶ 18.) On October 1, 2018, the defendant completed her plan. She transferred almost all of the bitcoin in her newly created Localbitcoins.com account into a bitcoin wallet controlled by Website-1, and the defendant informed Website-1 of the transfer. (PSR ¶ 20.)

On April 12, 2021, the defendant pled guilty to one count of murder for hire, in violation of Title 18, United States Code, Sections 1958 and 2. The Probation Department has determined that the total offense level, after accounting for acceptance of responsibility, is 29. The defendant has zero criminal history points, which places her in Criminal History Category I. Accordingly, the applicable Guidelines Range is 87 to 108 months' imprisonment.

## II.  Discussion

### A.  Applicable Law

The Guidelines still provide important guidance to the Court following *United States v. Booker,* 543 U.S. 220 (2005), and *United States v. Crosby,* 397 F.3d 103 (2d Cir. 2005). Indeed, although *Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. *Booker,* 543 U.S. at 264. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States,* 552 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)-(7). *See Gall,* 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)   to afford adequate deterrence to criminal conduct;
(C)   to protect the public from further crimes of the defendant;

  (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

  **B.**  **The Court Should Impose a Sentence Within the Guidelines Range**

  A sentence within the applicable Guidelines Range would appropriately take into account the factors set forth in 18 U.S.C. § 3553(a).

  First, a sentence within the Guidelines Range is necessary to reflect the seriousness of the defendant's conduct, promote respect for the law, and to provide just punishment for the offense. As discussed above, the defendant took several calculated steps over the course of an approximately 15-day period to pay for the murder of her wife. Along the way, she attempted to hide her involvement in the scheme. First, the defendant took a $6,000 loan out in the name of her wife, without telling her. Second, the defendant opened two new cryptocurrency exchange accounts to pay for the murder. Third, to open one of those accounts, the defendant created an entirely new email address. Fourth, when transferring money between the two new bank accounts, the defendant tried to mask the purpose of the transfers by noting that they were for "investment," rather than the murder of her wife. Of course, during this whole time, the defendant remained married to her wife.

  As these facts demonstrate, the defendant's plot was not a spur-of-the-moment decision. The defendant had ample time to change her mind. However, at no point during that time period did the defendant stop her plan to murder her wife. Once she paid for the murder, she waited for it to be completed. Fortunately, Website-1 did not act on the order, and the wife was not physically harmed. However, the mental impact of this plot cannot be understated, as the wife explained to the Probation Department. (PSR ¶ 24.) This is a serious offense, and a Guidelines sentence is necessary to reflect its gravity. A non-incarceratory sentence, which the defendant asks for, simply does not account for the dangerousness of the offense and the serious potential physical harm (or even death) that could have occurred to her wife. Nor does it reflect the significant emotional harm caused to the wife.

  Second, a sentence within the Guidelines Range is necessary to afford adequate specific and general deterrence. Even though this is the defendant's first conviction, she nevertheless committed an extremely serious and dangerous crime. Had Website-1 acted on the defendant's order, the defendant's wife could have been seriously injured or killed. Additionally, a non-incarceratory sentence would fail to deter others from paying for the murder of other individuals.

  Finally, the Probation Department recommends that the defendant pay a fine of $6,000—the loan amount the defendant took out in her wife's name and the amount of the murder the defendant ordered. The defendant argues that the Court should not impose a fine because she is indigent. However, "[c]urrent indigence is not an absolute barrier to imposition of a fine," and, "even an incarcerated defendant can earn money in [her] prison account to pay the fine by working within the prison." *United States v. Workman*, 110 F.3d 915, 918 (2d Cir. 1997); *see also United States v. Thompson*, 227 F.3d 43, 45 (2d Cir. 2000) ("[A]fine may be imposed on a defendant who is presently indigent if the record contains evidence of his capacity to pay the fine from prison

earnings, or from earnings after h[er] release from prison." (citations omitted)). Here, the Court should impose a fine in light of the seriousness of the offense, and the fact that she paid for the murder by taking a loan out in her wife's name.

### III. Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence within the applicable Guidelines Range of 87 to 108 months' imprisonment.

                                      Respectfully submitted,

                                      AUDREY STRAUSS
                                      United States Attorney

                         by: /s/ Rebecca T. Dell
                              Rebecca T. Dell
                              Assistant United States Attorney
                              (212) 637-2198

cc:     Marne Lenox, Esq. (ECF)