# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

Southern District of New York
Jennifer L. Brown
*Attorney-in-Charge*

August 30, 2021

**BY ECF**

The Honorable Judge Sidney H. Stein
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

RE: <u>United States v. Desirae Schneider</u>
     20 Cr. 325 (SHS)

Honorable Judge Stein:

I write in response to the Court's June 30, 2021 order concerning long term residential mental health treatment options for Desirae Schneider.

In June, the Court held an in-person sentencing hearing for Desirae Schneider. Her mother, stepfather, sister, and brother-in-law sat in the audience; her father listened to the proceeding by phone. At the close of the hearing, the Court held Ms. Schneider's sentence in abeyance pending additional information about possible residential psychiatric treatment programs for Ms. Schneider. Specifically, the Court directed the defense, in consultation with Probation and the Government, to recommend a specific course of mental health treatment or programs for the Court to consider before imposing Ms. Schneider's sentence.

Ms. Schneider is currently scheduled to be sentenced on September 30, 2021 at 11:00 am.

**I.    Residential mental health treatment is not a viable option for Ms. Schneider.**

For the reasons detailed below, the Department of Probation, mitigation specialists at the Federal Defenders of New York, and Ms. Schneider's current mental health care providers agree that residential mental health treatment is not appropriate for Desirae Schneider.[1]

---

[1] The defense also reached out to the Government for input on appropriate residential treatment options. The Assistant U.S. Attorney indicated that she is unaware of specific programs and suggested Probation would be the best resource.

To begin, Probation does not contract with long term residential mental health care providers. In an email to the defense, Probation stated, "We, nor the federal courts have the authority to place someone in long term inpatient treatment." While Probation recognizes that Your Honor may order residential mental health treatment as a condition of release, it cautions, "our office would not be able to adequately enforce such an order." For these reasons, Probation has not recommended to the defense any residential treatment options for Ms. Schneider.

Per the Court's order, the defense has identified a variety of residential psychiatric treatment programs. For the reasons detailed below, the defense does not believe any of these programs are appropriate for Ms. Schneider.

*Mount Sinai Partial Hospital Program.* This program offers inpatient care for two to six weeks and accepts insurance. Admission to the program requires a referral from the patient's current mental health provider indicating why this level of care is appropriate. Because Ms. Schneider's current provider does not believe residential treatment is clinically appropriate, she cannot receive the necessary referral for acceptance into the program.

*Gracie Square Hospital.* This hospital provides short-term acute psychiatric care programs and accepts insurance. The average length of stay is one to two weeks. Patients are admitted exclusively through hospital emergency departments and must be tested and medically cleared before they are accepted. This setting is inappropriate for Ms. Schneider, as her psychiatric needs do not currently qualify her for admission to a hospital emergency department.

*All Points North Lodge.* This is a private residential facility that provides mental health and trauma therapy in Edwards, Colorado. It serves clients diagnosed with mood disorders and anxiety disorders. The length of stay depends on an individual's needs; the minimum length of stay is 30 days. The least expensive option for a 30-day stay is $55,000; they do not contract with any major insurance providers.

*Solara Mental Health.* Located in California, this private inpatient facility has a separate clinical treatment center where residents receive psychiatric care, including at least three weekly individual therapy sessions. They specialize in primary mental health, including depression, anxiety, trauma and mood disorders. The minimum stay is four weeks; most clients stay for two to three months depending on their needs. Ms. Schneider's health insurance does not cover the cost of this program, which is $32,000 for 30 days. Clients must be individually assessed and determined to be clinically appropriate before they are admitted.

*Bridges to Recovery.* This is a private residential mental health facility with locations in California specializing in mood disorders, anxiety disorders, and trauma. Clients participate in five individual psychotherapy sessions weekly, as well as daily group therapy. The average length of stay is 60 days with a 30-day minimum stay. The length of stay depends on an individual's clinical needs and treatment goals. The current rate for the initial 30 days is $74,500; they do not accept insurance.

*Silver Hill Hospital.* This is a full-service psychiatric hospital in New Canaan, Connecticut that treats anxiety disorders and mood disorders, including depression. They offer inpatient

treatment for medication management and stabilization, similar to a hospital emergency room setting. Inpatient treatment typically lasts for 5 to 12 days or more, depending on the symptoms. Individuals may continue treatment at a transitional living program, which range from 28 days to 42 days; the 42-day program targets individuals with persistent psychotic illness. One of their transitional living programs provides Dialectical Behavioral Therapy (DBT), which teaches individuals to cope with uncomfortable feelings and discourages self-destructive behaviors. Patients in the DBT program, which lasts 28 days, participate in group therapy during the day, meet individually with a clinician twice weekly, and receive medication management once a week. The DBT program costs $50,660; Ms. Schneider's insurance will not cover this cost.

* * *

The defense does not endorse residential mental health treatment for Ms. Schneider for the following reasons.

First, Ms. Schneider does not meet the clinical criteria for inpatient psychiatric care. Generally, the criteria for admission for inpatient psychiatric services includes: (1) symptoms of a psychiatric illness requiring immediate therapeutic intervention; (2) conclusion that inpatient mental health treatment is the least restrictive level of care appropriate to treat the patient; (3) demonstration that the patient presents an actual or imminent danger to themselves or others. Moda, Inpatient Mental Health, available at https://www.modahealth.com/pdfs/med_criteria/InpatientMentalHealth.pdf (last visited Aug. 26, 2021). Ms. Schneider's mental health counselor, who has been treating her for the last ten months, believes Ms. Schneider's current level of outpatient therapy is "appropriate and effective" for Ms. Schneider. Letter of Marissa Robinson, Exhibit A. Probation agrees: "The severely mentally ill are the individuals who are housed in long term mental health treatment facilities/hospitalization. Based on the information regarding Ms. Schneider, it also does not appear she meets the clinical criteria definition for long-term inpatient care."

Second, these programs are cost prohibitive. Because Probation does not contract with any inpatient mental health providers, Probation informed the defense, "the Courts and/or the Probation Office would not be able to pay for the housing of [Ms. Schneider] for inpatient treatment." While Ms. Schneider has health insurance, her coverage extends only to in-network providers and is not accepted by the residential programs listed above, which charge tens of thousands of dollars per month. Ms. Schneider and her family cannot afford the going rate for 30 days of residential treatment, let alone an extended stay.

Third, Ms. Schneider could not earn a living during the period of residence in an inpatient program. For the past decade, including the entire time she has been under pretrial supervision, Ms. Schneider has worked full time to support herself. If Ms. Schneider were admitted to a long term residential mental health program, she would risk losing her current position as an executive at a fitness and wellness startup company.

Fourth, admission to a residential program would require Ms. Schneider to spend time far away from her friends and family, who have served as a valuable support network. Upon speaking with the mental health residential treatment administrator of Woodstock Manor and The Academy

House, two long term residential mental health facilities in upstate New York, the defense learned that certain statewide health restrictions preclude residential mental health programs from having onsite clinical therapy. Instead, New York-based residential programs provide alternative therapies, such as art and music therapy; individuals must seek clinical therapy off-site. Accordingly, the programs the defense has identified as potentially fitting the Court's criteria for suitable residential alternatives to incarceration are all out of state, far from the family and friends Ms. Schneider relies on for support.

For these reasons, the defense does not believe residential mental health treatment is appropriate for Ms. Schneider.

## II. Ms. Schneider proposes an intensive outpatient psychotherapy regimen as a condition of Probation.

For the past ten months, Desirae Schneider has attended weekly psychotherapy sessions with Marissa Robinson, a mental health counselor at myTherapyNYC. *See* Letter of Marissa Robinson, Exhibit A. There, she has been diagnosed with Unspecified Depressive Disorder. *Id.* Ms. Schneider has "responded well to this level of care;" her therapist "endorses this level of care as appropriate and effective for Ms. Schneider." *Id.*

Given this, Ms. Schneider proposes a multi-prong approach to outpatient therapy with wraparound services all provided by myTherapyNYC, where she currently engages in weekly intensive cognitive therapy. Like inpatient treatment, this plan will allow Ms. Schneider to engage in a variety of clinical therapy modalities at a single location, enabling her providers to consult with one another to maximize her wellbeing. And because myTherapyNYC accepts Ms. Schneider's insurance, she will not bear the crippling financial burden of private residential treatment. Significantly, extensive outpatient therapy will allow Ms. Schneider to maintain her current position as the Vice President of Corporate Partnerships at a fitness and wellness startup company, which enables her to continue paying down her extraordinary debts, a feat should could not accomplish were she incarcerated or admitted to a long term residential program.

The intensive outpatient therapy plan is as follows:

*First*, Ms. Schneider will continue receiving intensive cognitive therapy once a week with her mental health counselor. This 45-minute session addresses anxiety, depression, disassociation, and trauma. This includes post-cognitive therapy homework, which consists of journaling, topical reading, and listening to webinars. Ms. Schneider also maintains a daily journal of personal, emotional experiences and reflections on therapy. Ms. Schneider's insurance partially covers this therapy; she pays $200 out of pocket for each weekly session.

*Second*, Ms. Schneider will attend 60-minute weekly Eye Movement Desensitization and Reprocessing (EMDR) trauma therapy. EMDR therapy "facilitates the accessing of the traumatic memory network, so that information processing is enhanced, with new associations forged between the traumatic memory and more adaptive memories or information." Letter of Kimia Moghadam, Exhibit B. Unlike other psychiatric treatments, during EMDR, Ms. Schneider "attends to emotionally disturbing material in brief and sequential doses while simultaneously focusing on

4

external stimulus." *Id.* Ms. Schneider attended her first session on August 25, 2021 and plans to continue with weekly EMDR trauma therapy at myTherapyNYC. Ms. Schneider's insurance partially covers this therapy; Ms. Schneider pays $300 out of pocket for each weekly session.

*Third*, Ms. Schneider will continue to actively participate in her medication management by maintaining her current biweekly individual assessment of her anxiety and depression. She will also continue monthly meetings with her psychiatrist for medication management and will continue to take her prescription mood stabilizing medications as directed by her psychiatrist. *See* Brightside Medical Records, Exhibit C.

Alternatively, the Court may order Ms. Schneider to attend outpatient therapy as a condition of Probation through the providers with which Probation contracts. Currently, this includes: (1) New York Forensics, 139 Manhattan Avenue, New York, NY; and (2) New York Mental Health Group, 100 Church Street, Suite 840, New York, NY.[2] Each of these facilities provides individual, group, and family counseling and medication management, as necessary. The mental health specialist at the Department of Probation advised that Probation does not currently have a recommendation concerning Ms. Schneider's placement in a particular program. By email, Probation stated, "Between now and that time many factors could change and the recommendation of where she should attend, if anywhere, could be different."

For these reasons, the intensive outpatient regimen proposed by the defense is optimal for Ms. Schneider.

### III. Ms. Schneider proposes 200 hours of community service as a condition of Probation.

The Court has expressed concern that a non-incarceratory sentence may not serve the general deterrence or retributive aims of sentencing given the gravity of the offense. For Ms. Schneider, who before this matter had never been arrested let alone incarcerated, the conditions of pretrial release over the past year and a half have been restrictive. Five years of probation promises to be even more punishing.

Though Ms. Schneider has remained in the community, her liberty has been significantly constrained over the past 17 months. Every day since her arrest, Ms. Schneider has worn an ankle monitor. This appendage, a scarlet letter, has served a significant retributive and general deterrence purpose. The monitor signals to the general public that Ms. Schneider is under criminal supervision, and functions as a constant reminder of her wrongdoing. Further, Ms. Schneider must contend with significant restrictions on her travel. Though not behind bars, Ms. Schneider must request the Court's permission before straying beyond the Eastern and Southern Districts of New York, including the need to ask permission to drive to Astoria, Queens, a mere 15 minutes away from her apartment. For an individual whose liberty has never been curtailed, who has long

---

[2] Probation also informed the defense that it contracts with three separate co-occurring outpatient programs, but because Ms. Schneider does not have a substance abuse disorder, the defense does not believe these programs would be appropriate for Ms. Schneider.

traveled freely across county and state lines without restriction, the current limitations on Ms. Schneider's movement and the promise of continued restrictions while on probation are punishing.

To bring additional meaning to Ms. Schneider's sentence, the defense proposes that Ms. Schneider complete 200 hours of community service. In particular, Ms. Schneider has expressed interest in volunteering for the Anti-Violence Project, which empowers LGBTQIA communities to end all forms of violence and support survivors through counseling and advocacy.

**IV.     Conclusion**

As expert psychiatrist Dr. Kate Termini opined, "Ms. Schneider is not a violent individual. Her long-standing self-loathing, depression, fear of judgment, and inability to accept failure were exacerbated by a severe depressive episode and the downfall of a marriage. These issues can be successfully addressed in therapy, and thus, this would reduce the chance of recidivism or of a return to a prior level of dysfunctional behavior. Ongoing treatment and supervision are integral to successfully address any such concerns of reoffending." Doc. 71, Exh. 1, Forensic Psychological Evaluation, Exhibit I at 18.

To be sure, Ms. Schneider committed a serious offense that requires punishment and general deterrence. But given her complete lack of criminal history, a sentence of five years' probation—with the exacting conditions she proposes—is sufficient but not greater than necessary to achieve the deterrent effect of sentencing. Should the Court find the above-proposed conditions not sufficiently punitive, the defense respectfully requests that the Court consider a sentence of home detention in lieu of imprisonment. A period of incarceration could undermine Ms. Schneider's mental health progress and, perversely, heighten her risk of recidivism.

Thank you for your consideration of Ms. Schneider's request for a sentence of five years' probation with the special conditions proposed above.

Respectfully submitted,

/s/
Marne L. Lenox
Assistant Federal Defender
(212) 417-8721

cc:     Rebecca Dell, Assistant U.S. Attorney
        Christopher Paragano, U.S. Probation Officer